**PBT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CANON BUSINESS SOLUTIONS, INC. :

         :  Civil Action No. _____  **10 512**

Plaintiff,         :

         :

v.          :

         :

JOHN JURJEVICH, LEV TAYTS, GREGORY :

ATENCIO, JOANN D. KSENICS and  :

KEYSTONE DIGITAL IMAGING, INC. :

         :

Defendants.       :

---

## MEMORANDUM OF LAW IN SUPPORT OF CANON BUSINESS SOLUTION, INC.'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

<br>

Robert M. Goldich (25559)
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215-988-7883
Facsimile: 215-717-5242
Email: goldichr@gtlaw.com

Attorneys for Plaintiff
Canon Business Solutions, Inc

# TABLE OF CONTENTS

I.   FACTS..............................................................................................................2

   A.  The Parties ..................................................................................................2

   B.  Solutions' Protection Of Its Confidential Information And Trade Secrets...............3

   C.  The Individual Defendants' Employment By, Termination From and Competition With Solutions ................................................................................................4

      1.  Jurjevich ............................................................................................4

      2.  Ksenics ..............................................................................................6

      3.  Tayts..................................................................................................6

      4.  Atencio ..............................................................................................7

   D.  Defendant KDI's Wrongful Conduct ..............................................................8

II.   ARGUMENT ..................................................................................................9

   A.  Solutions Is Entitled To Injunctive Relief ......................................................9

      1.  Solutions Will Likely Prevail On Its Claim That The Individual Defendants Violated Their Confidential Information and Intellectual Property Agreements........................9

      2.  Solutions Will Likely Prevail On Its Tortious Interference With Contract Claims Against Defendants Tayts, Atencio and KDI ....................................................15

      3.  Solutions Will Likely Prevail On Its Claim That Defendants Violated The Uniform Trade Secrets Act..................................................................................17

      4.  Solutions Will Likely Prevail On Its Claim That Defendants Engaged In Unfair Competition..........................................................................................19

      5.  Solutions Will Suffer Irreparable Harm If The Injunction Is Denied..........................20

      6.  The Balance Of Harm Favors Solutions. .........................................................21

      7.  The Public Interest Will Best Be Served By Protecting Solutions. ............................21

   B.  Solutions is Entitled to Expedited Discovery ...................................................22

III.   CONCLUSION ................................................................................................23

## TABLE OF AUTHORITIES

*Alpart v. General Land Partners, Inc.*, 574 F.Supp.2d 491 (E.D. Pa. 2008) ................................. 15

*A.M. Skier Agency, Inc. v. Gold*, 747 A.2d 936 (Pa. Super. 2000) ................................. 17, 18

*Asness v. Nelson*, 273 A.D.2d 165 (1st Dep't 2000) ................................. 14, 15

*Baier v. Jersey Shore State Bank*, 2009 WL 2843325 (M.D. Pa. Aug. 31, 2009) ................................. 19

*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999) ................................. 9, 10, 11, 13, 14

*Bell Fuel Corp. v. Cattolico*, 544 A.2d 450 (Pa. Super 1988) ................................. 18

*Chernoff Diamond & Co. v. Fitzmaurice, Inc.*, 234 A.D.2d 200 (1st Dep't 1996) ................................. 11

*Christopher M's Hand Poured Fudge, Inc. v. Hennon*, 699 A.2d 1272 (Pa. Super. 1997) ................................. 17

*Contempo Communs., Inc. v. MJM Creative Svcs., Inc.*, 182 A.D.2d 351 (1st Dep't 1992) ................................. 10

*Continental Grp. Inc. v. Kinsley*, 422 F. Supp. 838 (D. Conn. 1976) ................................. 12

*Entertainment Technology Corp. v. Walt Disney Imagineering*, 2003 WL 22519440 (Oct. 2, 2003) ................................. 22

*Fisher Orga, Inc. v. Ryan*, 122 Misc.2d 305 (N.Y. Civ. Ct. 1983) ................................. 12

*Garvin GuyButler v. Cowen & Co.*, 155 Misc.2d 39 (Sup. Ct. N.Y. Co. 1992) ................................. 12

*Goebel Brewing Co. v. Esslingers, Inc.*, 373 Pa. 334 (Pa. 1953) ................................. 19

*ID Security Sys. Canada, Inc. v. Check-point Sys., Inc.*, 249 F.Supp.2d 622 (E.D. Pa. 2003) ................................. 19

*Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs.*, 871 F. Supp. 709 (S.D.N.Y. 1995) ................................. 14

*Instant Air Freight Co. v. C.F. Air Freight*, 88 F.2d 797 (3d Cir. 1989) ................................. 20

*Judge Technical Services, Inc. v. Clancy*, 813 A.2d 879 (Pa. Super. 2002) ................................. 16

*Kelly-Springfield Tire Co. v. D'Ambro*, 408 Pa.Super. 301 (1991) ................................. 15

*Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52 (3d Cir. 1994) ................................. 9

*Macbeths-Evans Glass Co. v. Schnelbach*, 239 Pa. 76 (1913) ................................. 18

*Maier v. Maretti*, 448 Pa. Super. 276 (1995) ................................. 15

*Maltby v. Harlow Meyer Savage, Inc.*, 166 Misc. 2d 481 (N.Y. Sup. Ct. N.Y. Co. 1995) ................................. 14

*Morgan's Home Equip. Corp. v. Martucci*, 390 Pa. 618 (1957) ...................................... 17, 18, 19

*National Business Services, Inc. v. Wright*, F.Supp.2d 701 (E.D. Pa. 1998)............................ 22

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)........................................................................ 22

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578 (3d Cir. 2002) ................................................................................................... 9

*Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303 (1976) ........................................................ 10

*Robert Half International, Inc. v. Stenz*, 2000 WL 1716760 (E.D. Pa. Nov. 17, 2000) ................ 9

*SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals, Inc.*, 63 F.Supp.2d 467 (S.D.N.Y. 1999) ..................................................................................................................... 21

*Strickland v. University of Scranton*, 700 A.2d 979 (Pa. Super 1997) ........................................ 15

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999)................................................... 10, 14

*Trans-Continental Credit & Collection Corp. v. Foti*, 270 A.D.2d 250 106 (2nd Dep't 2000) .... 10

This case is a classic example of a concerted effort by one company to obtain the confidential and proprietary information of and cause injury to another company with which it directly competes, by wooing and hiring its competitor's employees for employment in violation of their restrictive covenants.

Plaintiff Canon Business Solutions, Inc. ("Solutions"), which is in the business of selling and leasing Canon brand office equipment and providing integrated systems technology, hired defendants John Jurjevich ("Jurjevich"), JoAnn Ksenics ("Ksenics"), Lev Tayts ("Tayts") and Gregory Atencio ("Atencio") (collectively, the "Individual Defendants") as account executives and representatives. None of the Individual Defendants brought customers with them to their employment by Solutions. Rather, they were assigned to Solutions' customers and provided with Solutions' resources to develop additional customers. During the course of their employment, the Individual Defendants had access to Solutions' confidential business information, including the names, addresses and contact information of customers, financial terms of equipment leases and purchases, expiration dates of leases, competitive intelligence and information concerning prospects. In exchange, the Individual Defendants signed Confidential Information and Intellectual Property Agreements (the "Agreements") that required, among other things, that following their termination from Solutions, the Individual Defendants would maintain the confidentiality of Solutions' business information, avoid engaging in the sale of similar products in the same territory that they worked for Solutions for a period of one year and avoid soliciting Solutions' employees.

In violation of the Agreements, following their termination by Solutions, the Individual Defendants all began working for defendant Keystone Digital Imaging, Inc. ("KDI", together with the Individual Defendants, the "Defendants"), which competes directly with Solutions in the

sale and leasing of office equipment. As such, Defendants have improperly misappropriated Solutions' confidential information and trade secrets and are using such information to improperly contact Solutions' current and prospective customers and current employees.

Without relief from this Court, Defendants will continue to improperly profit from the confidential and proprietary property of Solutions and Solutions will continue to suffer harm. Therefore, Solutions asks this Court to preliminarily enjoin: (i) the Individual Defendants from working for KDI in the geographic area in which each Individual Defendant worked for Solutions; (ii) Defendants from soliciting any of Solutions' customers and prospects; (iii) Defendants from soliciting or hiring Solutions' current employees for employment in violation of their contractual violations; and (iv) Defendants from using or disclosing Solutions' trade secrets and confidential business information. Plaintiff also seeks to require Defendants to return to Plaintiff all of its documents and confidential information or any information derived from it.

## I.      **FACTS**

### A.      **The Parties**

Plaintiff Solutions is in the business of providing integrated systems technology to customers in the office equipment industry. (Complaint ¶ 9).[1] Solutions provides its customers with a broad range of network office systems, graphic systems, copiers, printers, scanners and fax machines, as well as support for this equipment. (Id. ¶ 10). Solutions only markets, sells and leases Canon brand office equipment. (Id. ¶ 11).

Over the years, through significant investment of capital and other resources, Solutions has developed a valuable customer base. (Id. ¶ 12). Solutions derives a competitive advantage from confidential business information which it maintains in a password protected data base.

---

[1] The Facts are taken from the Verified Complaint.

This includes the names, addresses and contact information of customers, financial terms of equipment leases and purchases, expiration dates of leases, competitive intelligence, and information concerning prospects. (Id. ¶ 13).

Defendants Jurjevich, Ksenics, Tayts and Atencio are individuals who were formerly employed by Solutions. Defendant KDI competes directly with Solutions in the sale and leasing of office equipment and systems solutions/technology. However, in addition to selling Canon brand equipment, KDI sells and markets other brands, such as Toshiba and Savin. (Id. ¶ 20). KDI currently employs the Individual Defendants in the same geographic territory as they worked for Solutions. (Id. ¶¶ 22, 32, 38, 49).

## B.  Solutions' Protection Of Its Confidential Information And Trade Secrets

Solutions' confidential business information and trade secrets are vital to its business. Among other protections, Solutions requires all of its employees to sign Confidential Information and Intellectual Property Agreements. Each of the Individual Defendants signed identical Confidential Information and Intellectual Property Agreements upon starting their employment with Solutions.   (Complaint, Exs. A - D).   The Agreements contain an acknowledgment with respect to Solutions' confidential information as follows:

> I acknowledge that no such CONFIDENTIAL INFORMATION is owned by me, and that all such CONFIDENTIAL INFORMATION shall remain the exclusive property of the owner thereof . . . and constitutes valuable trade secrets of its owner.

(Complaint, Exs. A – D, ¶ 3).

The Agreements also contain particular provisions applicable to the period following an employee's termination from Solutions.   Specifically, with respect to former employees' covenant not to compete with Solutions, the Agreement provides:

> For a period of one year after my employment with CANON ends (or for a period equal to the length of my employment with

> CANON, if shorter), I will not, directly or indirectly, render
> services in the geographic region where I performed my duties for
> CANON . . . if my services would relate to the development,
> manufacture, marketing, sale, merchandising, promotion or
> maintenance of any products or processes which are similar to, or
> compete with, (a) products or processes of CANON with which I
> worked at any time during the last two years of my employment
> with CANON, or (b) products or processes about which I acquired
> CONFIDENTIAL INFORMATION through my employment at
> any time during the last two years of employment with CANON.

(Complaint, Exs. A - D, ¶ 9.1). The Agreement further provides with respect to the solicitation

of Solutions employees following an employee's termination:

> After my employment with CANON ends, I will not seek to induce
> other employees, agents or representatives of CANON or any entity
> related to CANON to terminate their relationship with CANON or
> any entity related to CANON[.]

(Complaint, Exs. A - D, ¶ 9.4). Finally, the Agreements contain an acknowledgment regarding

the irreparable harm any breach of the Agreements would cause Solutions:

> I acknowledge and recognize that any breach or threatened breach
> by me of any of the covenants of this Agreement shall cause
> CANON irreparable harm which cannot be readily remedied in
> damages in and action of law and the damages to CANON would
> be very difficult to determine. Therefore . . . I hereby consent to the
> specific enforcement of any applicable section of this Agreement
> by CANON through an injunction or restraining order issued by
> any appropriate court

(Complaint, Exs. A - D, ¶ 11).

### C.    The Individual Defendants' Employment By, Termination From and Competition With Solutions

#### 1.    Jurjevich

Defendant Jurjevich was hired by Solutions in 2001 to work as an account executive in

its Horsham, Pennsylvania office. (Complaint ¶ 14). As a condition of initial employment,

Jurjevich was required to sign to a Confidential Information and Intellectual Property

Agreement. (Id. Ex. A). Throughout his employment by Solutions, Jurjevich was from time to

- 4 -

time reminded of his obligation to maintain the confidentiality of Solutions' customer information and other confidential and proprietary information, and to use such information only for purposes related to his employment at Solutions. (Id. ¶ 15). Jurjevich brought no customers with him when he joined Solutions as an employee. As a result of his employment by Solutions, he was assigned customers and developed additional customers using the resources provided to him by Solutions. Over time, Jurjevich became responsible for a customer base generating substantial annual revenue for Solutions. (Id. ¶ 16).

In 2008 and 2009, Jurjevich's performance declined. As a result, Solutions engaged in a counseling process designed to improve his performance and put him on notice of the Company's expectations. (Complaint ¶ 17). Jurjevich's performance did not improve. As a result, when there was a reduction in force in the sales organization in which he worked, Jurjevich was laid off from Solutions effective December 31, 2009. (Id. ¶ 18).

After termination by Solutions, Jurjevich commenced employment with KDI. Jurjevich took with him when he left Solutions a broad range of confidential and proprietary information. Jurjevich has misappropriated this information and is using it competitively in connection with his employment by KDI. Jurjevich is working for KDI in the same geographic area in which he worked for Solutions. On or about January 21, 2010, Jurjevich sent an email to the email addresses of a customer list representing the customers to whom he provided services at Solutions, and which he improperly misappropriated from Solutions. Jurjevich's email announced his intention to compete against Solutions in his employment by KDI. (Id. ¶¶ 21-23).

Following transmission of this email, Jurjevich has followed up with repeated solicitations and visits to other of the customers and prospects to whom he provided services at Solutions. (Id. ¶ 24). Jurjevich has stated his intention to disregard his contractual and legal

obligations to Solutions. (Id. ¶ 25). His conduct has caused and threatens to cause Solutions irreparable injury through erosion of its customer base, as well as loss of profit due to improper competition by Jurjevich on behalf of KDI.

Jurjevich then in turn further violated his Agreement by soliciting Defendant Ksenics to become an employee at KID. (Id. ¶ 26).

### 2.   Ksenics

Defendant Ksenics was employed by Solutions since April 2004. She also signed a Confidential Information and Intellectual Property Agreement with Solutions (Exhibit B). She serviced approximately 200 specific accounts. After Jurjevich was terminated, Ksenics was assigned some of his accounts. Thereafter, Jurjevich solicited Ksenics on behalf of KDI and recruited her to work for KDI in the same geographic area in violation of her agreement with Solutions. (Id. ¶¶ 27-31).

### 3.   Tayts

Defendant Tayts was hired by Solutions in December 2007 as an account representative in its Philadelphia sales division reporting to an employee in Solutions' Wilmington, Delaware office. (Complaint ¶ 33). As a condition of initial employment, Tayts was required to sign a Confidential Information and Intellectual Property Agreement. (Id. Ex. C).

Solutions subsequently opened a new branch office in the vicinity of Harrisburg, Pennsylvania, and Defendant Tayts was assigned to that office as an account representative servicing customers in a territory primarily located in Lancaster County, Pennsylvania, where he lived. (Id. ¶ 34). Defendant Tayts did not bring with him any customers to Solutions. He was assigned customers by Solutions and developed additional customers through Solutions' expenditure of resources. Tayts provided service to a customer base generating substantial annual revenue for Solutions. As an employee of Solutions, Tayts was given access to a broad

range of confidential information concerning customers and prospects of Solutions. (Id. ¶ 35-36).

In the year 2009, Tayts' performance was unsatisfactory.  As a result, he received multiple written warnings for unsatisfactory performance and was eventually terminated for poor performance effective November 24, 2009.  (Complaint ¶ 37).  Following termination of employment by Solutions, Tayts commenced employment with KDI in violation of his restrictive covenant.  (Id. ¶ 38).  Tayts is working for KDI in the same geographic area as he worked for Solutions.  Since commencing employment with KDI, Tayts has engaged in solicitation of Solutions' customers and prospects in violation of his obligations to Solutions, and using confidential and proprietary information misappropriated from Solutions.

In January 2010, Defendant Tayts solicited business from a medical practice in Lancaster County, Pennsylvania, which was an active prospect of Solutions at the time of his termination of employment.  (Id. ¶ 46).  In violation of his contractual obligation to Solutions, Tayts also participated in the recruitment of Defendant Atencio from Solutions to work at KDI. (Id. ¶ 41).

### 4.    Atencio

Defendant Atencio was hired by Solutions effective January 2009 as an account representative in Solutions' Harrisburg, Pennsylvania office. (Id. ¶ __).  As a condition of initial employment, Defendant Atencio signed a Confidential Information and Intellectual Property Agreement.  (Ex. D).  Atencio was at all times a satisfactory employee of Solutions, and Solutions considered him a valuable asset to the organization. As was the case with Defendants Jurjevich and Tayts, Atencio did not bring any customers with him to Solutions when he commenced employment.  Rather, he was assigned a valuable customer base and developed additional customers utilizing resources provided to him by Solutions.  Atencio, likewise, had

access to a broad range of confidential and proprietary information concerning Solutions' customer base and prospects. (Id. ¶ 44-45).

Atencio resides in Lancaster County, Pennsylvania. After the termination of Tayts, he was assigned by Solutions to a number of accounts previously assigned to Tayts in this territory. In January 2010, Solutions learned that Atencio intended to resign his employment to accept a position at KDI working with Defendant Tayts. (Id. ¶ 47). Upon learning this information, Solutions' managers met with Atencio to attempt to persuade him to stay. During the course of this meeting, Atencio repeatedly maintained that he was not going to join KDI, but rather that he was going to accept a position in the insurance business. During the meeting, Atencio was reminded of his obligations under his non-competition agreement with Solutions. (Id. ¶ 48).

Since his resignation from Solutions, Atencio has participated in the solicitation of customers and prospects in his former territory on behalf of KDI in competition with Solutions. (Id. ¶ 49). Both Tayts and Atencio also solicited another Solutions employee for a position at KDI. (Id. ¶ 50). Upon learning of the breach of Tayts and Atencio of their contractual obligations with Solutions, Solutions sent each of them letters reminding them of their contractual obligations and seeking assurances that they would comply with these obligations. (Id. ¶ 51). Neither Defendant Tayts nor Defendant Atencio responded to these letters.

**D.    Defendant KDI's Wrongful Conduct**

KDI received copies of Solutions' letters to Tayts and Atencio reminding them of their contractual obligations and seeking assurances that they would comply with these obligations. KDI failed to respond to the letters on behalf of Tayts or Atencio or otherwise contact Solutions about these individual Defendants' breach of their respective post-employment obligations. (Id. ¶¶ 52-53). Upon information and belief, KDI is aware that all of the Individual Defendants have signed a Confidential Information and Intellectual Property Agreement. KDI has taken no steps

- 8 -

to ensure that the Individual Defendants comply with their post-employment obligations to Solutions.

## II.   **ARGUMENT**

### A.   **Solutions Is Entitled To Injunctive Relief**

A plaintiff seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is not granted; (3) greater harm will result to plaintiff if the injunction is not granted than the harm resulting to defendant if the injunction is granted; and (4) the public interest favors the granting of the injunction.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3d Cir. 2002).  As explained below, Solutions satisfies each of these requirements.

### 1.   **Solutions Will Likely Prevail On Its Claim That The Individual Defendants Violated Their Confidential Information and Intellectual Property Agreements.**

The Individual Defendants' conduct is a clear and substantial violation of the Agreements, which as a matter of the applicable New York law (Exhibits A-D, ¶ 13) are enforceable against them.[2]

New York courts routinely enforce restrictive covenants to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets or confidential information; (2) to protect the employer's proprietary customer relationships; or (3) in those cases where the employee's services to the employer are deemed special or unique.  See BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999) ("'In this context a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area,

---

[2] Because this Court sits in diversity, it should apply the choice of law rules of Pennsylvania in deciding which state's law to apply here. Pennsylvania has adopted Section 187 of the Restatement (Second) Conflict Laws, under which the law of the state chosen by the parties in their contract will apply. Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994); Robert Half International, Inc. v. Stenz, No. CIV.A. 00-2570, 2000 WL 1716760 (E.D. Pa. Nov. 17, 2000).

necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.'") (quoting <u>Reed, Roberts Assoc. v. Strauman</u>, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 679 (1976)); <u>Trans-Continental Credit & Collection Corp. v. Foti</u>, 270 A.D.2d 250, 704 N.Y.S.2d 106 (2d Dep't 2000) (same); <u>Contempo Communs., Inc. v. MJM Creative Svcs., Inc.</u>, 182 A.D.2d 351,353-54, 582 N.Y.S.2d 667, 668-69 (1st Dep't 1992) ("An employee's use or disclosure of trade secrets or confidential customer lists will be enjoined as will competition from an employee whose services were special, unique or extraordinary.") (citing <u>Reed, Roberts</u>); <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63 (2d Cir. 1999) (enforcing six-month restriction on competition) (interpreting New York state law).

Applying these standards, Solutions requires enforcement of the Agreements to protect its trade secrets and confidential information, which the Individual Defendants have misappropriated (and used) to steal business and customers away from Solutions.

a.      Solutions Has A Legitimate Interest In Protecting Its Customer Relationships

Solutions provides its customers with a broad range of network office systems, graphic systems, copiers, printers, scanners and fax machines, as well as support for and updates to this equipment. Solution's customer relationships are vitally important to its success. Solutions therefore has a legitimate interest in protecting these established customer relationships, which are currently threatened by the Individual Defendants' ongoing misconduct, described in the Verified Complaint. <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63 (2d Cir. 1999) (stating that "[a]n employer has sufficient interest in retaining present customers to support an employee covenant where the employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business") (internal quotation and citation

- 10 -

omitted).  This legitimate interest was summarized by the New York Court of Appeals in <u>BDO Seidman v. Hirshberg</u>, 93 N.Y.2d 382, 690 N.Y.S.2d 854 (1999):

> Protection of customer relationships the employee acquired in the course of employment may indeed be a legitimate interest.  The risk to the employer reaches a maximum in situations in which the employee must work closely with a customer over a long period of time, especially when her services are a significant part of the total transaction.  Then, the employee has been enabled to share in the goodwill of a client or customer, which the employer's over-all efforts and expenditures created.  The employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense, to the employer's competitive detriment.

<u>BDO Siedman</u>, 93 N.Y.2d at 391-92 (citations and quotations omitted) (emphasis added).

Likewise, here, as in <u>BDO Seidman</u>, Solutions has a legitimate interest in protecting its customer relationships and preventing its former employees, the Individual Defendants, from exploiting and misappropriating its customers' goodwill, which Solutions has spent years developing at its own expense.

      **b.**     Solutions Has A Legitimate Interest In Protecting Its Proprietary And Confidential Information

An employer also has a legitimate interest in protecting its confidential and proprietary information.  <u>Reed, Roberts Assocs., Inc.</u>, 40 N.Y.2d at 308, 386 N.Y.S.2d at 680 ("[T]he courts must also recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy.  Thus restrictive covenants will be enforceable to the extent necessary to prevent the disclosure or use of trade secrets or confidential customer information.") (citations omitted); <u>Chernoff Diamond & Co. v. Fitzmaurice, Inc.</u>, 234 A.D.2d 200, 202-03, 651 N.Y.S.2d 504, 506 (1st Dep't 1996) ("[T]he issue is not only whether plaintiff's client list was confidential . . . but also whether defendant obtained, while in plaintiff's employ, invaluable and otherwise unobtainable

information concerning the business practices and resulting insurance needs of these clients due to his position as their trusted professional advisor."). The need to protect such information is particularly compelling where, as here, the plaintiff has expended substantial time, money and effort to develop this information.

As set forth above, the Individual Defendants worked as account executives and representatives. As such, the Individual Defendants worked closely with a number of Solutions clients and customers, and, accordingly, had access to sensitive, confidential business information of Solutions and its customers, including, but not limited to, the names, addresses and contact information of customers, financial terms of equipment leases and purchases, expiration dates of leases, competitive intelligence and information concerning prospects. These categories of information qualify as trade secrets, especially where, as here, the former employees are engaged in the identical business, are directly competing with their former employer, and will inevitably use such information in their new employment. See e.g., Continental Grp, Inc. v. Kinsley, 422 F. Supp. 838 (D. Conn. 1976) ("It is enough if the second employer's work is sufficiently similar to that of the first employer to make likely the risk of disclosure by the employee in the course of her subsequent employment."); Garvin GuyButler v. Cowen & Co., 155 Misc.2d 39, 46, 588 N.Y.S.2d 56, 59-60 (Sup. Ct. N.Y. Co. 1992) (recognizing that a trade secret "can be a formula, process, device or compilation of information used in one's business which confers a competitive advantage over those in similar businesses who do not know or use it."); Fisher Orga., Inc. v. Ryan, 122 Misc.2d 305, 470 N.Y.S.2d 968 (N.Y. Civ. Ct. 1983) ("[w]here the information was compiled by the employer only after a considerable period of time it becomes a valuable asset of the business and is protected as a trade secret.").

Here, the Individual Defendants have misappropriated Solutions' confidential information and trade secrets to compete with Solutions and solicit Solutions' customers on behalf of their new employer, Solutions' competitor, KDI. The Individual Defendants' conduct is ongoing, and continues to result in the theft of business that rightfully belongs to Solutions. The Individual Defendants were given access to Solutions' confidential information after agreeing to adhere to a number of restrictive covenants. The Individual Defendants have knowledge of Solutions' customers and their particular needs and business requirements, and are now working in a setting in which it is inevitable that they will use and disclose this special knowledge. Furthermore, the Individual Defendants are acting in violation of the Agreements by soliciting Solutions' current employees in an effort to convince them to similarly work for KDI in competition with Solutions.

> ### c.   The Agreements Are Reasonably Tailored

The Agreements prohibit the Individual Defendants from competing with Solutions for a period of one year following the end of their employment with Solutions. (Complaint, Exs. A - D). Specifically, each Individual Defendant agreed as follows:

> For a period of one year after my employment with CANON ends (or for a period equal to the length of my employment with CANON, if shorter), I will not, directly or indirectly, render services in the geographic region where I performed my duties for CANON . . . if my services would relate to the development, manufacture, marketing, sale, merchandising, promotion or maintenance of any products or processes which are similar to, or compete with, (a) products or processes of CANON with which I worked at any time during the last two years of my employment with CANON, or (b) products or processes about which I acquired CONFIDENTIAL INFORMATION through my employment at any time during the last two years of employment with CANON.

New York courts routinely uphold agreements restraining solicitation of a former employer's customers for similar time periods. For example, in <u>BDO Seidman</u>, the New York

Court of Appeals upheld an 18-month restraint on the defendant servicing plaintiff BDO Seidman's clients. The Court stated that "[t]he time constraint appears to represent a reasonably brief interlude to enable the firm to replace the client relationships and goodwill defendant was permitted to acquire with some of its clients." Id. at 392. The Court therefore enforced the restraint but "narrowed" it to eliminate restrictions with respect to defendant's "personal clients." Id.; Maltby v. Harlow Meyer Savage, Inc., 166 Misc. 2d 481, 486, 633 N.Y.S.2d 926, 930 (N.Y. Sup. Ct. N.Y. Co. 1995), aff'd, 637 N.Y.S.2d 110, 223 A.D.2d 516 (1st Dep't 1996) (enforcing six-month non-competition restriction on brokers working on plaintiff's brokerage desk); Chernoff, 234 A.D.2d at 202-03, 651 N.Y.S.2d at 506 (holding that plaintiff sufficiently demonstrated likelihood of success on the merits where it was "clearly shown" that plaintiff would suffer "irreparable harm" if its clients "terminate[d] their relationships with it in order to use defendant's services"); see also Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70-71 (2d Cir. 1999) (enforcing six-month restriction on competition); Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., 871 F. Supp. 709, 728 (S.D.N.Y. 1995) (finding restrictive covenant to be "reasonable" where 12-month covenant was of "relatively short duration"; precluded employee from competing with employer but did not preclude him from engaging in "general real estate development" or "brokerage activities"; was not otherwise anticompetitive; and where covenant "was necessary for [employer's] protection").

As to the geographic limitation on the Individual Defendants' providing competing services, whereby the Individual Defendants are restricted from competing in the same geographic region where they worked for Solutions, a similar restraint was upheld by the Appellate Division, First Department in Asness v. Nelson, 273 A.D.2d 165, 711 N.Y.S.2d 717 (1st Dep't 2000), a case that also involved a one year restriction:

- 14 -

> The record made on plaintiff's motion for preliminary injunctive relief indicates that the 12-month limitation placed upon plaintiff is of reasonable duration; that the restriction is reasonably limited geographically to New York and New Jersey; that the restriction is necessary to protect defendants' interests; that enforcement of the restriction will not be harmful to the public; and that abiding the restriction will not be unduly burdensome to plaintiff.

Id. at 165, 717. This Court should do the same and uphold the reasonably tailored restrictive covenants in this case, which are limited to the regions in which the Individual Defendants performed their work for Solutions. Furthermore, the Individual Defendants will not be unduly burdened by the enforcement of the restrictive covenants because they will only be restricted from working for KDI in competition with Solutions in the same areas where they worked for Solutions. Nothing Solutions seeks as a remedy here would prevent the Individual Defendants from working for KDI in other territories.

**2.       Solutions Will Likely Prevail On Its Tortious Interference With Contract Claims Against Defendants Tayts, Atencio and KDI**

Under Pennsylvania law, tortious interference with contract requires four elements: (1) the existence of a contractual or prospective contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing that relationship from occurring; (3) the absence of a privilege or justification for such interference; and (4) damages resulting from the defendant's conduct. See Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997); Alpart v. General Land Partners, Inc., 574 F.Supp.2d 491, 506 (E.D.Pa. 2008), citing Kelly-Springfield Tire Co. v. D'Ambro, 408 Pa.Super. 301, 596 A.2d 867, 871 (1991). Parties to the contract cannot be proper defendants for a tortious interference claim pertaining to that contract. Maier v. Maretti, 448 Pa.Super. 276, 671 A.2d 701, 707 (1995) ("Essential to recovery on the theory of tortious interference with a

contract between a plaintiff and a third person.... As a result there must be a contractual relationship between the plaintiff and a party other than the defendant.").

Pennsylvania courts have found both former employees and competitors to have tortiously interfered with contracts in circumstances like the instant case. Judge Technical Services, Inc. v. Clancy is instructive. 813 A.2d 879 (Pa. Super 2002). In Judge, the plaintiff company sued its former employees and their new employer, the plaintiff's competitor, for breach of non-compete agreements and tortious interference with contract based on their wooing of other of plaintiff's employees to work for the defendant competitor. Id. at 883-84. The Superior Court affirmed the Court of Common Pleas' award of compensatory and punitive damages and a permanent injunction that afforded the plaintiffs "the opportunity to undo some of the damage done by the breaches of their former employees, while not having to fend off further encroachments by them." Id. at 892.

Similarly, Solutions is likely to prevail on both of its tortious interference claims. Defendant Tayts knowingly and intentionally interfered with Solutions' agreement with Atencio by participating in the recruitment of Atencio from Solutions to work at KDI. Solutions has been damaged by losing a valued employee with good performance in Atencio, and by having the employee hired by Solutions' competitor, where it is inevitable that Atencio has and will continue to reveal Solutions' confidential information and trade secrets. Defendants Tayts and Atencio have also solicited another Solutions employee for employment in a position at KDI. This solicitation is disruptive of Solutions' business and risks further misappropriation of Solutions' confidential information and trade secrets. Similarly, KDI has knowingly, intentionally and wrongfully interfered with Solutions' agreement with each of the Individual

Defendants by persuading them to join KDI and reveal and use Solutions' confidential information and trade secrets in violation of the restrictive covenants in the Agreements.

Therefore, based on the actions of Defendants Tayts, Atencio and KDI in soliciting Solutions' employees to leave their employment with Solutions and work for KDI in violation of their agreements with Solutions, Solutions is likely to prevail on both its tortious interference claims.

### 3.   Solutions Will Likely Prevail On Its Claim That Defendants Violated The Uniform Trade Secrets Act.

Apart from the Individual Defendants' violations of the Agreements, as to which injunctive relief is the presumptive remedy, Defendants are also violating Plaintiff's statutory and common law rights by using or disclosing Solutions' confidential and proprietary information to solicit Solutions' current and prospective customers.

The Uniform Trade Secrets Act, which has been adopted in Pennsylvania, provides for injunctive relief to enforce Plaintiff's rights to its confidential and proprietary information. 12 Pa. Cons. Stat. § 5301 et. seq. Furthermore, prior to the adoption of the Uniform Trade Secrets Act, courts found that Pennsylvania common law provided for an injunction against solicitation of customers even in the absence of an enforceable contractual non-competition agreement in cases involving confidential customer lists. Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 624, 136 A.2d 838, 842 (1957) (finding lists of confidential customer data was a trade secret supporting injunctive relief); A.M. Skier Agency, Inc. v. Gold, 747 A.2d 936, 941 (Pa. Super. 2000) (trial court properly issued a preliminary injunction for the misappropriation of trade secrets where employee stole directory listing customers' names and contact information that the employer developed through its efforts and great expense even if the employee could reconstruct the list with lots of effort); Christopher M's Hand Poured Fudge, Inc. v. Hennon, 699 A.2d 1272,

1276 (Pa. Super. 1997) (holding that even though there was no covenant not to compete protecting trade secrets, the confidential nature of the employment relationship established the basis for the court enjoining the employee's use of the employer's trade secrets).

The protection of trade secrets "must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged, nor even the same secrets as those sought to be protected." Macbeths-Evans Glass Co. v. Schnelbach, 239 Pa. 76, 86 A. 688 (1913). Pennsylvania courts use the following test for misappropriation:

> (1) that there was a trade…; (2) that it was of value to the employer and important in the conduct of business; (3) that by reason of discovery of ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the employee while he was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer. A.M Skier, 747 A.2d at 940.

In this case, the Individual Defendants were in a position of confidence with Solutions when it permitted them to access its trade secrets as employees. The position of confidence is evidenced by the Individual Defendants' signing of the Agreements that specifically delineates the confidential nature of the information and by Solutions' continuous reminders that the information was to remain confidential upon the Individual Defendants' departure.   See Morgan's Home Equip., 390 Pa. at 625 n.5, 136 A.2d 843, n.5 (stating that the non-disclosure agreement did not give the employer the right to protection for its trade secrets, but it was evidence of the confidential nature of the data involved); Bell Fuel Corp. v. Cattolico, 544 A.2d 450, 461 (Pa. Super. 1988) (holding that even without a valid covenant not to compete, an employer may properly seek an injunction for the protection of trade secrets). However, the Individual Defendants improperly used Solutions' trade secrets by soliciting Solutions clients. Defendant KDI is vicariously liable for the actions of the Individual Defendants occurring within

the course and scope of their employment.  Therefore, based on the Individual Defendants' relationships with Solutions, the confidential nature of information such as Solutions' customer lists, and Defendants' improper misappropriation of the confidential information, Solutions is likely to prevail on its claim that Defendants violated the Uniform Trade Secrets Act.

### 4.    Solutions Will Likely Prevail On Its Claim That Defendants Engaged In Unfair Competition

Pennsylvania Courts evaluate common law unfair competition claims in light of the Restatement (Third) of Unfair Competition § 1 (1995), which recognizes several categories of commercial behavior that give rise to a claim of unfair competition, including: (1) deceptive marketing, (2) infringement of trademark and other protectable intellectual property rights, (3) misappropriation of trade secrets and other intangible trade values, and (4) acts or practices that are actionable under federal or state statutes.  See Baier v. Jersey Shore State Bank, No. 4:07-CV-2236, 2009 WL 2843325, *14 (M.D. Pa. Aug. 31, 2009).  The comments to the Restatement further state that "[a]s a general matter, if the means of competition are otherwise tortious with respect to the injured party, they will also ordinarily constitute an unfair method of competition." Restatement § 1, cmt. g.

Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information. See ID Security Sys. Canada, Inc. v. Check-point Sys., Inc., 249 F.Supp.2d 622, 688 (E.D.Pa. 2003) (a finding of liability on a tortious interference with contract claim precluded granting summary judgment with respect to the claim of unfair competition); Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 635, 136 A.2d 838 (Pa. 1957) (trading on another's reputation constitutes unfair

competition); <u>Goebel Brewing Co. v. Esslingers, Inc.</u>, 373 Pa. 334, 347 (Pa. 1953) (trademark and trade name infringement constitutes unfair competition).

Here, as set forth in more detail above, Defendants have engaged in tortious conduct that constitutes unfair competition. Specifically, Defendants have misappropriated Solutions' confidential information and trade secrets and have tortiously interfered with Solutions' contractual relationships with its employees. As a result, Solutions is likely to prevail upon its claim that Defendants engaged in unfair competition.

**5.     Solutions Will Suffer Irreparable Harm If The Injunction Is Denied.**

Irreparable harm is an injury that "cannot be redressed by a legal or equitable remedy following a trial." <u>Instant Air Freight Co. v. C.F. Air Freight</u>, 882 F.2d 797, 801 (3d Cir. 1989). By virtue of their conduct described above, Defendants have breached the Agreements and violated the Uniform Trade Secrets Act. Defendants' improper solicitation has interfered with Solutions' relationships with its existing customers and at least one prospective customer. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the breach by the Individual Defendants of the Agreements and Defendants' collective tortious conduct.

Solutions has no adequate remedy of law. The erosion of Solutions' customer base will harm Solutions' business now and in the future. Indeed, the Individual Defendants consented to Solutions' right to injunctive relief in Court to enforce the Agreements. See Complaint, Exs. A - D, ¶ 11 ("I acknowledge and recognize that any breach or threatened breach by me of any of the covenants of this Agreement shall cause CANON irreparable harm which cannot be readily remedied in damages in and action of law and the damages to CANON would be very difficult to determine. Therefore . . . I hereby consent to the specific enforcement of any applicable section of this Agreement by CANON through an injunction or restraining order issued by any appropriate court.").

### 6.     The Balance Of Harm Favors Solutions.

Solutions already has proof of a substantial violation of the Agreements and believes that discovery will establish other violations of the Agreements.    Permitting the Individual Defendants to continue to freely violate the Agreements hurts Solutions more than being enjoined harms Defendants. The Individual Defendants must not be permitted to freely disregard their contractual obligations and misappropriate Solutions' trade secrets and confidential business information.

The Individual Defendants will suffer no prejudice by the injunctive relief Solutions seeks because such relief seeks only to compel the Individual Defendants to abide by their Agreements with Solutions.  Indeed, Individual Defendants would only be required to protect Solutions' trade secrets and confidential information, and adhere to the non-competition and non-solicitation restrictive covenants they expressly agreed to when they became employed by Solutions.  It would be inequitable not to enforce the post-termination restrictive covenants on the Individual Defendants and allow them to escape these requirements and, in the process, irreparably harm Solutions' business, interests and goodwill through their continuing misconduct.  Similarly, KDI would not be harmed by the proposed injunctive relief, as they can continue to employ the Individual Defendants in other geographic territories, and it would be inequitable to allow KDI to reap the benefit of Solutions' labor via the misconduct of the Individual Defendants.

Finally, what harm Defendants may suffer by the issuance of a preliminary injunction is the result of their own behavior.  See SmithKline Beecham Consumer Healthcare v. Watson Pharmaceuticals, Inc., 63 F. Supp. 2d 467, 473 (S.D.N.Y. 1999).

### 7.     The Public Interest Will Best Be Served By Protecting Solutions.

The public interest will not be harmed by an injunction.  To the contrary, it is in the public interest to require parties to comply with the terms of their legally binding contracts.  See National Business Services, Inc. v. Wright, 2 F.Supp. 2d 701, 709 (E.D. Pa. 1998) (enforcing restrictive covenants will "discourage unfair competition, the misappropriation and wrongful use of confidential information and trade secrets and the disavowal of freely contracted obligations").  Solutions has invested a considerable amount of time and money to develop its customer list and all of the confidential and proprietary information that goes into building its business.  It does not serve the public interest to permit ex-employees and a competitor to pilfer and then profit from Solutions' work.

**B.**    <u>**Solutions is Entitled to Expedited Discovery**</u>

District Courts have broad power to permit expedited discovery allowing plaintiff to take early depositions and to require early document production in appropriate cases.  See Fed. R. Civ. P. 30(b), 34(b).  District Courts in the Third Circuit use one of two tests in determining whether expedited discovery is appropriate.  The first, the <u>Notaro</u> test, based on Second Circuit case law, allows for expedited discovery when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant will suffer if expedited relief is granted.  See generally Entertainment Technology Corp. v. Walt Disney Imagineering, No. Civ-A 03-3546, 2003 WL 22519440, at *2 (E.D.Pa. Oct. 2, 2003) (citing Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982)).  The second approach is a more liberal "reasonableness inquiry" and depends on the circumstances of the case, including a pending preliminary injunction hearing.  See generally Entertainment Technology Corp., 2003 WL 22519440, at *3.

Under either test, Solutions has demonstrated the need for expedited discovery. Solutions is being irreparably harmed by the Individual Defendants' competing work for KDI, including their solicitation of current and prospective Solutions customers and employees. While Solutions has learned some aspects of the Individual Defendants' activities in violation of their Agreements and unfair competition and KDI's knowledge and assistance of the same based on an investigation it undertook in advance of filing the Complaint in this action, Solutions believes that full discovery will yield a complete set of information to cease the violation of Solutions' rights. To prevent further infringement and injury to Solutions, Solutions needs to ascertain this information without delay.

The discovery requested on an expedited basis in Solutions' proposed Order has been carefully limited to include only what is essential for the preliminary injunction. Discovery of the Defendants' solicitation of Solutions' current and prospective customers, misappropriation of Solutions' confidential business information, and other injurious activities toward Solutions' business, such as the solicitation of current Solutions' employees, will permit Solutions to gain an accurate picture of Defendants' misconduct. Specifically, Solutions needs to obtain discovery regarding the nature of the Individual Defendants' current employment, the geographic region in which they are working, and their solicitation activities.

Solutions is unaware of any reason that Defendants cannot comply with these requests without undue burden. More important, Defendants have engaged in deceptive practices, including Defendant Atencio's false statement that he was leaving Solutions to enter the insurance business, that indicate Solutions may lose the opportunity for meaningful discovery about the requested relief unless expedited discovery is granted.

## III.  CONCLUSION

- 23 -

Based upon the foregoing, Solutions respectfully requests that this Court grant an Order for expedited discovery against Defendants, and following hearing, grant to Plaintiff the injunctive relief sought in its Motion for Preliminary Injunction.

Dated:

March 19, 2010

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____

Robert M. Goldich (25559)
Greenberg Traurig, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  215-988-7883
Facsimile:  215-717-5242
Email: goldichr@gtlaw.com

Attorneys for Plaintiff
Canon Business Solutions, Inc

- 24 -